UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JOHN MCBREARTY,                    :
                                   :
        Plaintiff                  :    No. 4:11-CV-00909
                                   :
    vs.                            :    (Complaint Filed 5/12/11)
                                   :
MICHAEL ASTRUE,                    :
COMMISSIONER OF SOCIAL             :    (Judge Munley)
SECURITY,                          :
                                   :
        Defendant                  :

**MEMORANDUM**


**Background**

        The above-captioned action is one seeking review of a
decision of the Commissioner of Social Security ("Commissioner")
denying Plaintiff John McBrearty's claim for social security
disability insurance benefits and supplemental security income
benefits.

        On February 4, 2008, McBrearty filed protectively[1] an
application for disability insurance benefits and an application
for supplemental security income benefits. Tr. 14, 124, 152-158
and 226.[2]  On April 18, 2008, the Bureau of Disability

_____

1. Protective filing is a term for the first time an individual
contacts the Social Security Administration to file a claim for
benefits.  A protective filing date allows an individual to have
an earlier application date than the date the application is
actually signed.

2. References to "Tr.__" are to pages of the administrative
record filed by the Defendant as part of his Answer on August 9,
2011.

Determination[3] denied McBrearty's applications. Tr. 127-135. On May 20, 2008, McBrearty requested a hearing before an administrative law judge. Tr. 14 and 136-137. After 13 months had elapsed, a hearing before an administrative law judge was held on June 19, 2009. Tr. 14 and 25-107. On September 22, 2009, the administrative law judge issued a decision denying McBrearty's applications. Tr. 14-24. On October 10, 2009, McBrearty requested that the Appeals Council review the administrative law judge's decision and on March 11, 2011, the Appeals Council concluded that there was no basis upon which to grant McBrearty's request for review. Tr. 1-6. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

McBrearty then filed a complaint in this court on May 12, 2011. Supporting and opposing briefs were submitted and the appeal[4] became ripe for disposition on November 7, 2011, when McBrearty elected not to file a reply brief.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes.

3. The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits and supplemental security income benefits on behalf of the Social Security Administration. Tr. 127 and 131.

4. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that McBrearty met the insured status requirements of the Social Security Act through December 31, 2011. Tr. 14, 16 and 226.

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income.

McBrearty, who was born on December 9, 1971, is a United States citizen, and at all times relevant to this matter was considered a "younger individual"[5] whose age would not seriously impact his ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.963(c). Tr. 38, 60, 71 and 328.

McBrearty graduated from high school in 1990 and can read, write, speak and understand the English language and perform basic mathematical functions. Tr. 229, 246 and 329. During his elementary and secondary schooling McBrearty attended regular education classes. Tr. 234. His favorite class was arithmetic. Tr. 329. After graduating from high school he attended college for 2 years and obtained an Associate Degree in

_____

5. The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1). At the time of the administrative hearing and the administrative law judge's decision, McBrearty was 37 years of age.

general studies in 1994. Tr. 329. McBrearty has a driver's
license. Tr. 83.

McBrearty has a work and earnings history that spans
the years 1988 through 2007. Tr. 163 and 236. A vocational expert
testified that McBrearty's past relevant employment[6] consisted of
semi-skilled, sedentary work[7] as a telemarketer. Tr. 96.

---

6. Past relevant employment in the present case means work
performed by McBrearty during the 15 years prior to the date his
claim for disability benefits was adjudicated by the
Commissioner.  20 C.F.R. §§ 404.1560 and 404.1565.  At the time
of the administrative hearing the employment history of McBrearty
was incomplete.  The vocational expert declined to consider any
of the various positions held by McBrearty as past relevant
employment primarily because of the incompleteness of the record.
Tr. 89-96. However, it appears he also felt that each job was of
such short duration that it should not be considered. Id.
However, even though he had multiple jobs of short duration the
record reveals that McBrearty's earnings were more than nominal.
Tr. 163.  Also, McBrearty after the hearing submitted additional
employment records. Tr. 176, 187-190 and 201.

7. The terms sedentary, light, medium, heavy and very heavy work
are defined in the regulations of the Social Security
Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no
> more than 10 pounds at a time and occasionally lifting
> or carrying articles like docket files, ledgers, and
> small tools.  Although a sedentary job is defined as
> one which involves sitting, a certain amount of walking
> and standing is often necessary in carrying out job
> duties.  Jobs are sedentary if walking and standing are
> required occasionally and other sedentary criteria are
> met.

> (b) *Light work*.  Light work involves lifting no more
> than 20 pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.  Even
> though the weight lifted may be very little, a job is
> in this category when it requires a good deal of
> walking or standing, or when it involves sitting most

4

McBrearty also held numerous other jobs for short periods of time, including at restaurants and retail stores. Tr. 188-189.

Records of the Social Security Administration reveal that McBrearty had earnings as follows:

| | |
|---|---|
| 1988 | $   299.24 |
| 1989 | 2360.13 |
| 1990 | 0.00 |
| 1991 | 3335.78 |
| 1992 | 2484.06 |
| 1993 | 5324.07 |
| 1994 | 6009.80 |
| 1995 | 6787.29 |
| 1996 | 7925.24 |
| 1997 | 10998.54 |

---

of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(c) *Medium work*.  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can do sedentary and light work.

(d) *Heavy work*.  Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

(e) *Very heavy work*.  Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  If someone can do very heavy work, we determine that he or she can also do heavy, medium, light and sedentary work.

20 C.F.R. §§ 404.1567 and 416.967.

```
1998              11975.47
1999              10099.43
2000              15869.07
2001              14292,25
2002              10891.78
2003              13287.73
2004              20565.52
2005              10101.00
2006               5236.92
2007               4428.39
```

Tr. 170. McBrearty's total earnings from 1988 through 2007 were $162,271.71. Id.

McBrearty claims that he became disabled on January 1, 2008, because of mental problems, including depression, anxiety and attention deficit hyperactivity disorder. Tr.30-39 and 230. He also appears to contend that he suffers from asthma. Tr. 32 and 55  There is no medical evidence establishing that McBrearty has any exertional physical impairments.[8]  In one document filed with the Social Security Administration, McBrearty stated that he stopped working on October 1, 2007. Tr. 230. However, in December, 2007, he told a psychologist, Michael J. Raymond, Ph.D., that he was working part-time as a pizza delivery person. Tr. 329.  This discrepancy is not particularly relevant because McBrearty does not claim that he was disabled prior to January 1,

---

8. The exertional abilities are the strength demands of a given type of work.  Strength demands are the person's capacity to sit, walk, stand, lift, carry, push and pull. 20 C.F.R. § 404.1569a. Non-exertional limitations are the abilities to meet the demands of jobs other than the strength demands. Id.  These non-exertional limitations include difficulty performing postural functions such as stooping, climbing, crawling, crouching and reaching. Id.  They also include environment limitations such as the need to avoid exposure to fumes, odors, dusts, gases, poor ventilation and hazards such as machinery and heights. Id.

2008, and the administrative law judge found that McBrearty has not engaged in any substantial gainful activity since that date. Tr. 16, 152 and 156. The relevant time frame for reviewing the evidence is from the alleged onset date until September 22, 2009, the date the administrative law judge found that McBrearty was not disabled.

McBrearty on March 23, 2008, completed an 8-page document entitled "Function Report – Adult" in which he stated that he has difficulty with many physical and mental functions, including lifting, squatting, bending, standing, talking, seeing, memory, completing tasks, concentration, understanding, following instructions and getting along with others. Tr. 248. However, he admitted that he is able to engage in household chores such as doing the dishes and sweeping; he is able to walk, drive, ride in a car and ride a bicycle; he can go out alone; he shops in stores and by phone; he runs errands for his mother; he is able to pay bills and count change; and his hobby is walking which he does 4 times a week for 30 to 60 minutes; Tr. 243-247. In that document McBrearty also stated that he is "often up at nite (sic) with racing thoughts" Tr. 244. However, at the administrative hearing it was disclosed that he was up late at night using his computer to play poker over the internet. Tr. 65-67.

For the reasons set forth below we will affirm the decision of the Commissioner denying McBrearty's applications for disability insurance benefits and supplemental security income benefits.

## STANDARD OF REVIEW

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565

(1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**SEQUENTIAL EVALUATION PROCESS**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims. See 20 C.F.R. §404.1520 and 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[9] (2) has an impairment that is

9. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that

10

severe or a combination of impairments that is severe,[10] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[11] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge

---

"involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 404.1510 and 20 C.F.R. § 416.910.

10. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1520(c) and 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 404.1545(b). An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 1545(c).

11. If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

must determine the claimant's residual functional capacity. Id.[12]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**DISCUSSION**

The administrative law judge at step one of the sequential evaluation process found that McBrearty had not engaged in substantial gainful work activity since January 1, 2008, the alleged disability onset date. Tr. 16.

At step two of the sequential evaluation process, the administrative law judge found that McBrearty had the following severe impairments: "attention deficit hyperactivity disorder, nos,[13] depressive disorder, nos, generalized anxiety disorder and

---

12. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

13. "NOS" is an abbreviation for "not otherwise specified."

personality disorder." Id. The administrative law judge found that these impairments "have more than a minimal impact on [McBrearty's] ability to perform some work-related activities, and therefore, are severe." Id. As for McBrearty's asthma the administrative law judge found that it was a non-severe impairment. Id. As we will note *infra* even though McBrearty's asthma was considered non-severe, the administrative law judge in the residual functional capacity made an accommodation for it.

At step three of the sequential evaluation process the administrative law judge found that McBrearty's impairments did not individually or in combination meet or equal a listed impairment. Tr. 16-19. In so finding, the administrative law judge relied on the opinion of Paul Taren, Ph.D., a state agency psychologist, who reviewed all of McBrearty's medical records on April 18, 2008. Tr. 22 and 339-355. The ALJ also explained in detail his step three finding. Id. His explanation spanned three pages and consisted of 16 paragraphs. The administrative law judge rejected the opinion of Richard E. Fischbein, M.D., a non-treating psychiatrist, who examined McBrearty on one occasion solely for the purpose of rendering an opinion in support of McBrearty's disability claim. Tr. 391-401. That examination lasted one hour and fifteen minutes and occurred on or about June 11, 2009. Tr. 391.

At step four of the sequential evaluation process the administrative law judge found that McBrearty could not perform his past relevant semi-skilled, sedentary work but that he had

the residual functional capacity to engage in the full-range of
work at all exertional levels

> except the claimant is limited from a respiratory
> standpoint and so the claimant cannot work in
> atmospheres or environments where there would be high
> concentrations of respiratory irritants.  The claimant
> has nonexertional limitations from an emotional,
> psychological standpoint.  This is an individual who
> needs to be working in a setting that is not subject to
> a great deal of changes, i.e., low stress, from two
> aspects, not subject to a great deal of changes in the
> work setting, meaning that we are talking about a
> predictable, stable, routine work environment and a
> work environment that does not involve any kind of
> exercise of independent judgment or decision making
> and a moderate level production pace.  Specifically,
> the production pace should not be of a high production
> pace and not specifically one that would be of a high
> quota expectation or one that would be solely measured
> by what one might call quota production.  The job
> should not involve a specific regimen of public
> contact, meaning that the work tasks should not involve
> interacting with any significance with members of the
> public. The work should be of an independent nature and
> not necessarily involved with any kind of a team type
> environment.

Tr. 19-20. In setting the residual functional capacity the
administrative law judge relied on the opinion of Dr. Taren and
rejected the opinion of Dr. Fischbein. Tr. 21-23.  The
administrative law judge further found that McBrearty's
statements concerning the intensity, persistence and limiting
effects of symptoms were not credible to the extent they were
inconsistent with an ability to perform the full-range of
unskilled work at all exertional levels as described above. Tr.
Tr. 21.

At step five, the administrative law judge based on a
residual functional capacity of unskilled work at all exertional

levels and the testimony of a vocational expert found that McBrearty had the ability to perform unskilled work as a packager, production helper and bench assembler, and that there were a significant number of such jobs in the regional and state economies. Tr. 23-24. The vocational expert identified all of these positions as unskilled work and two of them as medium work. Tr. 99-100.

The administrative record in this case is 527 pages[14] in length, primarily consisting of medical and vocational records. McBrearty argues that the administrative law judge erred by (1) rejecting the opinion of a treating physician Deborah J. Mistal, D.O., and the opinion of the non-treating psychiatrist, Dr. Fischbein, and (2) failing to give McBrearty a fair hearing. We have thoroughly reviewed the record in this case and find no merit in McBrearty's arguments.

The administrative law judge did an adequate job of reviewing McBrearty's vocational history and medical records in his decision, and the brief submitted by the Commissioner thoroughly reviews the medical and vocational evidence in this case. Tr. 14-24; Doc. 13, Brief of Defendant. Because the administrative law judge adequately reviewed the medical evidence in his decision we will only comment on a few items.

Initially we will note that McBrearty attempts to rely

_____

14. A large portion of the administrative record is irrelevant. It inappropriately contains the medical records of McBrearty's father.

primarily on evidence that was not submitted to the
administrative law judge, i.e., the records of Dr. Mistal's
treatment of McBrearty and a letter from Dr. Mistal, a family
practitioner, not a mental health specialist, that is dated
nearly three months after the ALJ's decision. Tr. 422.

Evidence submitted after the administrative law judge's
decision cannot be used to argue that the administrative law
judge's decision is not supported by substantial evidence.
Matthews v. Apfel, 239 F.3d 589, 594-595 (3d Cir. 2001). The
only purpose for which such evidence can be considered is to
determine whether it provides a basis for remand under sentence 6
of section 405(g), 42 U.S.C. Szubak v. Secretary of Health and
Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). Under sentence 6
of section 405(g) the evidence must be "new" and "material" and a
claimant must show "good cause" for not having incorporated the
evidence into the administrative record. Id. The Court of
Appeals for the Third Circuit explained that to be material "the
new evidence [must] relate to the time period for which benefits
were denied, and that it not concern evidence of a later-acquired
disability or of the subsequent deterioration of the previously
non-disabling condition." Id.

McBrearty does not argue that such evidence is the
basis for a new evidence remand, but instead attempts to
undermine the ALJ's decision with the evidence. McBrearty's
reliance on such evidence is impermissible under Matthews v.

<u>Apfel</u>.

McBrearty's claim that the administrative law judge failed to properly consider Dr. Fischbein's opinion is also meritless. Dr. Fischbein found that McBrearty met Listing 12.06 (Anxiety-related disorders) and Listing 12.02 (Organic Mental Disorders) and had "frequent[] bordering on constant" difficulty with concentration, persistence and pace; significant difficulty in social functioning; and between moderate and marked difficulty with activities of daily living. Tr. 399. The administrative law judge explained his rejection of Dr. Fischbein's opinion by stating in detail as follows:

> The claimant receives counseling at Northeast
> Counseling Services. A mental status examination
> on March 10, 2008 notes that the claimant was
> doing well with an increased dose of Effexor.
> It was specifically noted that his anxiety had
> improved and he indicated that he did not feel
> depressed. The claimant's global assessment of
> functioning (GAF) was 55. . . .[15]

---

15. The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. *Diagnostic and Statistical Manual of Mental Disorders* 3-32 (4th ed. 1994). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. <u>Id.</u> The score is useful in planning treatment and predicting outcomes. <u>Id.</u> The GAF rating is the single value that best reflects the individual's overall functioning at the time of examination. The rating, however, has two components: (1) symptom severity and (2) social and occupational functioning. The GAF is within a particular range if <u>either</u> the symptom severity <u>or</u> the social and occupational level of functioning falls within that range. When the individual's symptom severity and functioning level are discordant, the GAF rating reflects the <u>worse</u> of the two. Thus, a suicidal patient who is gainfully employed would have a GAF rating below 20. A GAF score of 21-30 represents behavior considerably influenced by delusions or

The claimant was consultatively examined by Richard Fischbein, M.D. In his report Dr. Fischbein notes that the claimant completed an Associate's Degree program and that he was never placed in special education or an independent educational program. The neuropsychological evaluation by Dr. Fischbein is replete with acceptance of the claimant's self-reported difficulties and areas of limitation absent specific testing. . . .

It must be noted that Dr. Fischbein is not a treating source of the claimant. Dr. Fischbein is relying solely and exclusively on one observation made on the day of the consultative examination and not upon objective long term observation and experiences with this individual. Dr. Fischbein's opinion is that the claimant's prognosis is guarded is not consistent with the findings of his mental status examination. . . .

The claimant participates in counseling with Northeast Counseling Services two to three times per month. However, he is not involved in any group or partial program and has not required nor sought more intensive psychiatric care or treatment, in or out patient. . . . As such, the undersigned must reject the opinion of Dr. Fischbein as it is clearly inconsistent with his own mental status examination findings[16] and the record

---

hallucinations or serious impairment in communication or judgment or inability to function in almost all areas. A GAF score of 31-40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. Id. A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. Id. A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id.

16. Dr. Fischbein's mental status examination findings were in toto as follows:

John McBrearty is a 37 year old largely build gentleman appearing stated age, fairly well groomed dressed casually wearing a cap. When he takes his cap off he has normal male pattern baldness. He seemed more confident during the interview having his mother present and she helped with some of the answers since he would be tangential at times in answering and not sure of some of the answers to my questions. His

as a whole. . . .

A neurological consultation was performed by Dr.
Raymond, Ph.D., a Diplomate of the American Board of
Professional Neuropsychology. . . Dr. Raymond
concludes that the claimant's Neuropsychological
Deficit was within the moderate range and the results
suggest moderate cognitive alterations.

The [Psychiatric Review Technique form] completed by
the Disability Determination Service non-examining
consultant, Paul [T]aren, Ph.D., indicated that the
claimant had mild restrictions in activities of daily
living; mild difficulties in maintaining social
functioning; moderate difficulties in maintaining
concentration, persistence, or pace and no episodes
of decompensation.

---

speech was slow, coherent and at time tangential. He
at times appeared to drift a bit and not be totally
focused. He did not appear overly anxious and was
cooperative throughout the hour and fifteen minute
interview. He denied any homicidal/suicidal ideations.
He admits to some mild paranoia and suspiciousness
when things don't go right or if he is under stress.
He admits to obsessing about things and getting stuck
on things and having difficulty staying focused. He
is not very confident when given time restraints or
several people are watching. He is painfully aware
that at times he acts inappropriate and that people
look at him and don't respect him because of the
mistakes he makes and how forgetful he is. He desires
to have people like him. He denied any auditory or
visual hallucinations. His intelligence level appears
to be low average but coupled with his cognitive
difficulties and poor concentration he appears even
more limited and would have difficulty performing in a
competitive situation where he is under stress or had
time limits or has to learn new tasks. His depression
and anxiety appear relatively in check at this point
but his attention deficit and social oddities and
inappropriate responses at times is quite obvious.
Though he is pleasant and not threatening he appears
somewhat odd in his mannerisms and in his hesitation
in answering and being distractible.

Tr. 398.

> In the Mental Residual Functional Capacity Assessment the claimant had no marked limitations and only moderate limitations in his ability to understand and remember detailed instructions, carry out detailed instructions and moderate limitations in his ability to maintain attention and concentration for extended periods. . . .
>
> The undersigned gives significant weight to the findings of Dr. [T]aren on the PRTF and the Mental Residual Functional Capacity Assessment . . . . The undersigned gives significant weight to the findings of Dr. Raymond who opined that the claimant remains independent in the vast majority of activities of daily living and that the claimant has moderate cognitive alterations.

Tr. 21-22. The administrative law judge gave an adequate explanation for rejecting Dr. Fischbein's opinion. Dr. Fischbein was a non-treating psychiatrist and his opinion is deserving of no special treatment or preference.

The records from Northeast Counseling Services consistently indicate that McBrearty had essentially normal mental status examination findings and GAF scores of 55, representing moderate limitations. Tr. 311-312, 314, 317, 383 and 385. The residual functional capacity set by the administrative law judge appropriately accommodated McBrearty's moderate mental limitations.

Dr. Taren found that McBrearty suffered from anxiety-related disorders and a personality disorder but his impairments did not meet or medically equal a listed impairment and that McBrearty "is able to carry out simple, routine tasks despite the limitations resulting from his impairment." Tr.349 and 355. The administrative law judge limited McBrearty to work involving

simple, routine tasks.  Dr. Raymond found that McBrearty had "moderate cognitive alterations" but "remains independent in the vast majority of activities of daily living" and "able to maintain part-time employment, manage finances, albeit with some trepidation, and operate[] an automobile." Tr. 404-405.  Dr. Raymond suggested that McBrearty from a vocational standpoint would "do best in a situation that limits social exposure and visual processing" and suggested that McBrearty's interest in landscape design was "feasible" but that "additional vocational alternatives should be explored and considered." Tr. 406.

The administrative law judge appropriately considered the evidence, including the opinion of the state agency psychologist, Dr. Taren. The administrative law judge's reliance on that opinion was appropriate. Cf. Chandler v. Commissioner of Soc. Sec., 667 F.3d. 356, 362  (3d Cir. 2011)("Having found that the [state agency physician's] report was properly considered by the ALJ, we readily conclude that the ALJ's decision was supported by substantial evidence[.]"). The administrative law judge appropriately took into account McBrearty's limitations in the residual functional capacity assessment.

The administrative law judge observed McBrearty testify and determined that his statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the ability to perform the unskilled work identified by the

vocational expert. Tr. 21. The administrative law judge was not required to accept McBrearty's claims regarding his mental limitations. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)(providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to make). It is well-established that "an [administrative law judge's] findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the administrative law judge] is charged with the duty of observing a witness's demeanor . . . ." Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility."). Because the administrative law judge observed McBrearty when he testified at the hearing on June 19, 2009, the administrative law judge is the one best suited to assess the credibility of McBrearty.

As for McBrearty's claim the he did not receive a fair hearing and that the ALJ failed in his duty to develop the record, we discern nothing in the record which supports that claim. McBrearty was represented by counsel at the hearing. That counsel was given the opportunity to submit information after the hearing. The claim that the ALJ was biased or prejudiced against McBrearty is insubstantial. There is no indication in the record

that the ALJ engaged in coercive, intimidating and irrelevant
questioning and prevented McBrearty from introducing evidence in
support of his claim or questioning fully the witnesses. <u>Cf.</u>
<u>Ventura v, Shalala</u>, 55 F.3d 900, 903-904 (3d Cir. 1995)(court
ordered new hearing before a different ALJ because the ALJ
engaged in coercive, intimidating and irrelevant questioning and
prevented the claimant from introducing evidence in support of
his disability claim). Furthermore, counsel during the
administrative hearing did not interpose any objections to the
administrative law judge's demeanor or manner of conducting the
hearing.  The transcript reveals that the administrative hearing
lasted 1 hour and 5 minutes which is much longer than we usually
see[17] and as stated above the administrative law judge requested
post-hearing submissions from counsel. Tr. 27 and 105-107.

Our review of the administrative record reveals that
the decision of the Commissioner is supported by substantial
evidence.  We will, therefore, pursuant to 42 U.S.C. § 405(g)


affirm the decision of the Commissioner.

An appropriate order will be entered.

---

17.  In reviewing social security disability appeals, we have
found that administrative hearings generally last from 20 to 30
minutes.

s/ James M. Munley
JAMES M. MUNLEY
United States District Judge

Dated: September 24, 2012